have anticipated that, in the execution of it, it might become necessary or convenient to sell the real estate. At any rate, by a process of elimination it becomes evident that that was the only purpose for which the power could have been given. It necessarily follows that the power passed to the substituted trustee, and that his grant effectually conveyed the title. Lahey v. Kortright, 132 N. Y. 450 [30 N. E. 989]."

In the case at bar, the trust, being unexecuted, vested in the Supreme Court, with all the powers and duties of the original trustee; and so it lay within the power of the court to appoint a trustee to execute the unexecuted trusts created by the testator. To that substituted trustee was intrusted the power of sale which had been conferred upon the executors by the will of the testator, in aid of and for the purpose of carrying out the testamentary disposition of his property in the form of a trust estate.

As it is stipulated that, if the power of sale could be exercised by a trustee appointed by the Supreme Court all the proceedings were in all respects regular, this court having reached the conclusion that such power could be so exercised, it follows that the judgment appealed from should be affirmed, with costs and disbursements to the respondent. All concur.

---

(88 Misc. Rep. 679)

In re HURLBUT.

(Supreme Court, Special Term, Queens County. January, 1915.)

MANDAMUS ⬡75—OFFICERS—SALARY OF ENGINEER—REDUCTION.

    Where the salary of an employé holding a classified position on the field staff of the engineering service of a borough has been reduced from the maximum to the minimum salary, following an inquiry by the acting president of the borough into the employé's work, conduct, punctuality, attendance, executive ability, and capacity for initiative, as well as into the salaries of other engineers doing the same class of work and receiving less pay therefor, a motion for a peremptory writ of mandamus, restoring his salary to the maximum amount, will be denied, in the absence of anything to show that the reduction was prompted by improper motives or contrived to trick him or circumvent the law.

    [Ed. Note.—For other cases, see Mandamus, Dec. Dig. ⬡75.]

Application of Francis L. Hurlbut for a peremptory writ of mandamus against Maurice E. Connolly, as President of the Borough of Queens, and another. Application denied.

Paul M. Pelletreau, of New York City, for relator.

Frank L. Polk, Corp. Counsel, of New York City (Edward S. Malone, of New York City, of counsel), for respondents.

CLARK, J. The position of the applicant in the field staff of the engineering service is classified by the municipal civil service commission as grade D, with a maximum salary of $2,100 and a minimum salary of $1,800. November 19, 1914, the salary of the applicant, then running at $2,100, was reduced to $1,800 through a letter addressed to him by the acting president of the borough of Queens. The return herein shows that the reduction followed an inquiry by the acting

president into the quality and quantity of the applicant's work, his general conduct, punctuality, attendance, executive ability, and capacity for initiative, as well as into the salaries of other engineers doing the same class of work and receiving less pay therefor. He now seeks a peremptory writ of mandamus restoring his salary to $2,100. In the tentative budget of a department, the salaries of employés for the coming year are proposed by the head of such department. The budget so prepared goes in regular course for approval to the board of estimate and apportionment, after revision by which body it is laid before the board of aldermen for final action. Salaries are therefore *proposed* by heads of departments, are *approved* by the board of estimate and are *fixed* by the board of aldermen. In a certain sense, therefore, it is true that "the head of a department cannot fix a salary"; but that rule, as stated in People ex rel. Stokes v. Tully, 108 App. Div. 345, 95 N. Y. Supp. 916, 1153, and Matter of Colihan v. Miller, 72 Misc. Rep. 140, 131 N. Y. Supp. 99, cited by the relator, has no close application to the case at bar. The tentative budget of a department reflects the judgment of the head of such department as to the number of employés required and the salaries that should be paid. For civil service employés of a particular grade he may propose any amount between the maximum and the minimum salary of that grade, there being often, between such limits, a difference of several hundred dollars. Economy suggests that a new employé be installed at the minimum salary of his grade, and that, if capacity be shown, his salary be increased from year to year until the maximum salary of the grade be reached. In that way alone may the city escape undue burdens and employés have a chance to earn advancements.

It may well happen, however, that the head of a department may propose for a new and untested employé a salary well above his attainments, and such mistake be not discovered until he shall have begun to discharge his duties. The question then arises whether such head of department has power at that time to reduce the salary. If such power be denied, then, for the rest of the fiscal year, such employés will receive an unearned salary and the city be penalized accordingly. Concededly a head of department cannot propose for a given grade a salary which falls below the established minimum salary of that grade. Within maximum and minimum limits the head of a department is, however, free to propose the salary which, taking into consideration the condition of the office and the qualifications of a particular employé, he deems to be just. It is not claimed in the case at bar, for instance, that the borough president could not have proposed in his budget for the year 1914 that the applicant receive for that year a salary of $1,800, or $1,900, or $2,000; and the precise question now before the court is whether the president of the borough had the power, similarly, to make reduction during the fiscal year. In challenging such power the burden is upon the applicant to point to some inhibition which has been disregarded; an inhibition, it must be remembered, which would derogate the common-law right to contract freely. Only upon establishing a clear legal right can he expect a writ of mandamus. People ex rel. Ajas v. Board of Education, 104 App. Div. 162, 93 N. Y. Supp. 300.

If the method provided in the charter for adjusting salaries has thus far been correctly interpreted by the court, the applicant cannot claim that the successive official acts which resulted in regulating the salary of his grade at $2,100 for the year 1904 entitled him to receive, or forced the head of department to allow, that amount. Such official action determined only that the applicant could be paid *as much* as $2,100. Neither the board of estimate nor the board of aldermen did more by their action than authorize the head of department to pay to the applicant $2,100 as a maximum salary. Even after the return of the budget, duly approved, the head of the department was still at liberty to give the applicant a lower salary. If, between maximum and minimum, the head of department could, at the commencement of the fiscal year, in his discretion, have chosen the amount he would allow for the year, why, during the year, could he not, in his discretion, acting bona fide, reduce the amount? This question addresses itself, not to the court, but to the applicant, and his answer must cite some direct or implied statutory prohibition.

No such prohibition has been indicated. He has not been removed, nor has his office been abolished; therefore, although he is a veteran fireman, he may not invoke section 21 of the Civil Service Law (Consol. Laws, c. 7). He is not an honorably discharged soldier, sailor, or marine. If there be in "the whole broad scope," which his counsel emphasizes, "of the Civil Service Law" any provision intended to protect the applicant, he has not pointed it out. Respecting the issue to be decided here, to wit, the power to reduce a salary pending the year, he has shown no privilege, exception, or exemption. In Davison v. Williams, 213 N. Y. 130, 107 N. E. 49, where a veteran fireman sought a preference, Cardozo, J., writing for the court, says:

"To make out the right to such a preference an employé must be able to put his finger upon the precise provision of the statute which secures it to him. This the relator cannot do."

Here the same requirement confronts the applicant. In the absence of any suggestion upon the record that the reduction of the applicant's salary was prompted by improper motive, or was contrived to trick him or to circumvent the law, the court will not interfere with the fair exercise of an unimpeached power. The application for a peremptory writ of mandamus is denied, with costs.

Application denied, with costs.