JACOB THOMA, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

(Argued January 17, 1934; decided February 27, 1934.)

*Arthur J. W. Hilly, Corporation Counsel* (*J. Joseph Lilly* and *Henry J. Shields* of counsel), for appellant. The head of a department has the power to reduce the salary of a subordinate within the limitations of the salary grades. (*Matter of Rudd* v. *Cropsey*, 159 App. Div. 275; *Walters* v. *City of New York*, 190 N. Y. 375; *People ex rel. Stokes* v. *Tully*, 108 App. Div. 345; *Matter of Hurlbut*, 88 Misc. Rep. 679; 169 App. Div. 958; *Matter of Hurlbut* v. *Connolly*, 92 Misc. Rep. 288; *Buckbee* v. *Board of Education*, 115 App. Div. 366; 187 N. Y. 544; *People ex rel. Tyng* v. *Prendergast*, 164 N. Y. Supp. 1042; 178 App. Div. 895; 221 N. Y. 659; *Matter of Sullivan* v. *McAneny*, 145 App. Div. 413; *Matter of Barton* v. *Brannan*, 141 App. Div. 295; *Koso* v. *Green*, 260 N. Y. 491.)

*Louis E. Felix* and *J. M. Cohen* for respondent. The Borough President had no power to reduce the plaintiff's salary. That power is confided in others under section 56 of the Greater New York Charter (Laws 1901, ch. 466). (*People ex rel. Stokes* v. *Tully*, 108 App. Div. 345; *People ex rel. Lodholz* v. *Knox*, 58 App. Div. 541; *Powell* v. *City of New York*, 65 App. Div. 421; *O'Malley* v. *Board of Education*, 160 App. Div. 261; *Sauerbrunn* v. *Board of Education*, 150 App. Div. 407; *Lazinsk* v. *City of New York*, 163 App. Div. 423; *People ex rel. Tyng* v. *Prendergast*, 164 N. Y. Supp. 1042; 178 App. Div. 895; *Matter of Colihan* v. *Miller*, 72 Misc. Rep. 140.)

CRANE, J. On the 1st day of August, 1920, the plaintiff was appointed as assistant engineer, grade D, in the bureau of sewers, borough of Queens, pursuant to the civil service rules and regulations, and given a salary of $3,008. The Municipal Civil Service Commission of the

city of New York had classified in the competitive class the position of assistant engineer, under the heading,

" III. The Engineering Service.

\*       \*       \*       \*       \*       \*       \*

" Grade 4. Assistant Engineer.

\*       \*       \*       \*       \*       \*       \*

" The positions in the Engineering Service are graded according to the amount of the annual compensation or its equivalent, attaching to each, as follows:

" Grade A — $1,200. annually,

" Grade B — 1,560. annually,

" Grade C — 2,160. annually,

" Grade D — 2,760. annually, or over."

As stated, the plaintiff came within grade D, receiving a salary over and above $2,760.

The head of the department, clothed with the power of appointment, had also the power of removal, except as limited by the Civil Service Law (Cons. Laws, ch. 7) and the charter (Laws of 1901, ch. 466), section 1543. In appointment he was obliged to select from the competitive class as listed by the Civil Service Service Commission. In removal, he was limited, if the plaintiff were a volunteer fireman, to giving notice and a hearing before action taken. (Civil Service Law, § 22.) The plaintiff was not removed from office; he was not demoted by being placed in a lower grade; nor was he advanced without examination into a higher grade. (Civil Service Law, § 16.) The question arising in this case is whether the head of the department could lower his salary within the grade. The power exists unless it be limited by some other statute than the Civil Service Law and Regulations. The plaintiff finds this limitation in section 56 of the Greater New York Charter, which reads: " The power is vested in, and it shall be the duty of the Board of Aldermen, upon the recommendation of the Board of Estimate and Apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury, irrespective of the amount fixed

by this or any other act, other than day laborers, teachers, examiners and members of the supervising staff of the department of education, * * *."

The purpose of this provision and section 226 is to restrict the appropriations and expenditures of the various departments of the city government. The adoption of the budget by the Board of Aldermen after submission by the Board of Estimate is the usual method of proceeding under section 56. The budget is made up for the year and the appropriations, as demanded, are set off in itemized form. The Board of Aldermen fixes the compensation in this way for every person to be paid out of the city treasury. The Board of Aldermen, however, does not say, nor has it power of saying, who shall fill the positions, or that the salary fixed for a position shall be paid to any named individual. The salary goes to the place or to the office; but the head of the department fills the place by his appointment. Beyond this restriction there is nothing in the law which prevents the head of the department from placing his employees within a certain grade as he sees fit.

Thus, within grade D, for the year 1924, the appropriations made were for three assistant engineers at $3,008 each, an assistant engineer at $2,808, an assistant engineer at $2,760, and the budget for 1925 as adopted by the Board of Aldermen gave two assistant engineers at $3,008 each, one at $2,808, and one at $2,796 and three at $2,772. As all these positions were within grade D, the appointing power, if he found the man whom he had put in the $3,008 position unsatisfactory, could at will change him and put him in the position which paid $2,772. This was not a removal from an office nor a change of grade within the Civil Service Law. (*People ex rel. Tyng* v. *Prendergast,* 164 N. Y. Supp. 1042; affd., 178 App. Div. 895; 221 N. Y. 659.) It was a discretion and an authority given to the appointing power which had not been taken away either by the charter or the Civil Service Law. We always start with the absolute

power of appointment and of removal unless some statute or Constitution directs otherwise.

The facts of this case are that the plaintiff on August 1, 1920, was employed as assistant engineer in the office of the President of the borough of Queens at $3,008 per annum. He had a leave of absence without pay for nearly a year. He came back, and from January 1, 1924, to April 30, 1924, he was paid at his old rate. He was then notified by the Borough President that his salary was reduced to $2,760 per annum to take effect May 1, 1924, and he was paid at that rate until November 30, 1925. The difference in pay between the two rates for this period amounts to $389.24, to collect which this action was brought. As stated above, both the $3,008 and the $2,760 rates per annum for assistant engineer were within grade D as classified by the municipal civil service. The plaintiff is wrong in thinking that because he was at first employed at $3,008 per year his compensation could not be reduced within the grade or that he held an office for which the salary had been fixed by the Board of Aldermen so that he, the individual named Jacob Thoma, became entitled to it as a salary fixed by statute, and that any reduction was in the nature of a removal or at least illegal.

Within the grade as classified by the civil service, the Borough President could shift the plaintiff from the $3,008 position to the lowest classified position within grade D, paid at $2,760 per annum. (See *Matter of Hurlbut*, 88 Misc. Rep. 679; affd., 169 App. Div. 958; *Walters* v. *City of New York*, 190 N. Y. 375; *People ex rel. Stokes* v. *Tully*, 108 App. Div. 345; *People ex rel. Tyng* v. *Prendergast*, 164 N. Y. Supp. 1042; affd., 178 App. Div. 895; 221 N. Y. 659; *Ernst* v. *Bd. of Education*, [BLANCHARD, J.] N. Y. L. J. May 16, 1912; *Wintersteen* v. *City of New York*, 220 N. Y. 57.)

In our view of the action taken by the Borough President it simply amounted to a change from the position paying $3,008 to one paying $2,760. The Borough President in the notification to the plaintiff and to the

municipal civil service called it a reduction of salary. All this happened in April of 1924. The plaintiff commenced this action almost three years later, in February of 1927, letting interest run on his claimed amount. He took no proceeding to compel the Borough President to restore him to the $3,008 place nor to compel the certification of his payroll at this figure.

Section 20 of the Civil Service Law provides: " It shall be unlawful for the comptroller * * * to draw, sign or issue, or authorize the drawing, signing or issuing of any warrant on the treasurer or other disbursing officer * * * for the payment of * * * any salary or compensation to any officer, clerk or other person in the classified service * * * unless an estimate, payroll or account for such salary or compensation, containing the names of the persons to be paid, shall bear the certificate * * * of the municipal civil service commission of such city, that the persons named in such estimate, payroll or account have been appointed or employed or promoted in pursuance of law and of the rules made in pursuance of law. Any officer, clerk or other person entitled to be certified by said commission, * * * to the comptroller * * * as having been appointed or employed in pursuance of law and of the rules made in pursuance of law and refused such certificate, may maintain a proceeding by mandamus to compel such commission * * * to issue such certificate."

While an action may be maintained under certain circumstances to recover a salary fixed by law or by contract (*Wintersteen* v. *City of New York, supra; Walters* v. *City of New York*, 190 N. Y. 375, at pp. 381, 382), yet where the incumbent has been removed from his position either by change of grade or removal from office his remedy is at least in the first instance by mandamus for his restoration, wherein, if successful, suit for compensation becomes unnecessary. Mandamus requires acting without delay — an alert attention to an asserted claim. Whether the plaintiff in this instance

pursued the wrong remedy is unnecessary for us to decide. From his own standpoint he claims an office with a fixed salary by law, for serving in which he was paid less. We, however, consider the action of the Borough President as a change from the $3,008 to the $2,760 position, all within the same grading. If this had been an illegal or unlawful removal or demoting of the plaintiff, his remedy was by mandamus. Neither remedy, however, is of any use to him, as the Borough President acted within his authority, as we have stated.

The judgments below, therefore, should be reversed and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur; KELLOGG, J., not voting.

Judgments reversed, etc.