RICHARD AUSTIN et al., Appellants, v. BOARD OF HIGHER EDUCATION OF CITY OF NEW YORK, Respondent.

First Department, May 27, 1958.

*Osmond K. Fraenkel* for appellants.

*Michael A. Castaldi* of counsel (*Peter Campbell Brown, Corporation Counsel,* attorney), for respondent.

BREITEL, J. Plaintiffs appeal from dismissal of their complaint on motion for legal insufficiency. Taking the complaint as true, as we must, plaintiffs were unlawfully dismissed from their positions in the city colleges under the Board of Higher Education of the City of New York. The dismissals occurred in 1953, following the pleading by plaintiffs of their privilege against self incrimination in hearings before a United States Senate Subcommittee. These dismissals were pursuant to the provisions of section 903 of the New York City Charter.[1] Since then, the United States Supreme Court in the case of *Slochower* v. *Board of Educ.* (350 U. S. 551) has held that the statute in its application to another person, a Professor Slochower, similarly situated, constituted a violation of due process and was, therefore, unconstitutional. On the remittitur, Professor Slochower was reinstated and received accrued salary less his earnings during the period (*Matter of Daniman* v. *Board of Educ.,* 2 N Y 2d 719).[2] On this basis plaintiffs in this action at law seek

[1] " § 903. Failure to testify.— If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."

[2] It also appears that plaintiffs entered into a stipulation with defendant some years ago in which it was agreed that the parties would be bound by the final order to be entered in a proceeding brought by a number of others, including Professor Slochower. Special Term, Kings County, has held that plaintiffs were not entitled under the stipulation to benefit from the eventually successful results obtained by Professor Slochower and dismissed their application (*Matter of Shlakman* v. *Board of Educ.,* 5 Misc 2d 901). There has been no appeal from this determination.

to recover salaries accrued from the time of their dismissals to the commencement of the action.

The first question is whether the dismissals of plaintiffs involved any act of discretion or quasi-judicial determination. If so, plaintiffs are time-barred, because they must first have sought review of the discretionary or quasi-judicial determination in an article 78 proceeding under the Civil Practice Act. Such a proceeding must have been brought within four months after the determination had become final and binding (Civ. Prac. Act, § 1286; *Matter of Foy* v. *Brennan*, 285 App. Div. 669). Nor may the time be indirectly extended by bringing an action rather than the special proceeding (*Colodney* v. *New York Coffee & Sugar Exch.*, 4 A D 2d 137, affd. 4 N Y 2d 698). Such an action, of course, would have to be in equity because until the discretionary or quasi-judicial determination had been upset, there would be no legal right to recover the accrued salary. (*Barry* v. *Mulrain*, 1 A D 2d 623.) If the dismissals, however, involved neither an act of discretion nor a quasi-judicial determination, then remedy by action or proceeding may be obtained within four months after demand on defendant to perform the duty specifically enjoined on it by law, namely, to reinstate plaintiffs in their positions or to pay them their salaries (Civ. Prac. Act, § 1286; *Matter of Foy* v. *Brennan*, 285 App. Div. 669, *supra*).

The dismissals were automatic, involving neither an act of discretion nor a quasi-judicial determination. Section 903 of the charter provides that a city employee's employment shall, in the event he claims the privilege against self incrimination in the circumstances described, terminate and the employment be vacant. The statute provides for a self-executing forfeiture. No further action is required. No further action was taken by defendant except to dismiss in response to the clear and unqualified mandate of the statute. Thus, too, no hearings were required and none were held; no charges were placed; nor any findings made, as would have been required had these employees been removed for cause under provisions of the Education Law. In this very context, the Court of Appeals has said that the claiming of the privilege to which section 903 is applicable is equivalent to a resignation (*Matter of Daniman* v. *Board of Educ.*, 306 N. Y. 532, 538).[3]

The next question is whether plaintiffs must first have obtained reinstatement to their positions from which they had been

---

[3] Reversed, in part, *sub nom. Slochower* v. *Board of Educ.*, 350 U. S. 551. *supra*.

illegally dismissed, before they may seek to recover accrued salary. A parallel question is whether an article 78 proceeding is the exclusive remedy for plaintiffs, either to effect reinstatement or to recover accrued salary, or at least to effect reinstatement as a condition precedent to an action for recovery of accrued salary.

Cases of not so long ago asserted not only that a municipal employee illegally removed must promptly obtain reinstatement by mandamus (now embraced in an article 78 proceeding), but also that reinstatement is a condition precedent to recovery of accrued salary to which he was entitled (*Matter of Barmonde* v. *Kaplan,* 266 N. Y. 214; *Thoma* v. *City of New York,* 263 N. Y. 402).

More recently, however, the Court of Appeals has held that a proceeding in the nature of mandamus is not the exclusive remedy for one illegally removed but that an action at law may lie to recover accrued salary so long as only a clear legal right was involved, uncomplicated by an act of administrative discretion or quasi-judicial determination (*Toscano* v. *McGoldrick,* 300 N. Y. 156). Thus, too, this court has since stated, rather broadly, that the *Toscano* case was authority for the proposition " that an action at law is available for an illegal ouster from a civil service position ", provided no act of discretion was involved (*Barry* v. *Mulrain,* 1 A D 2d 623, 625, *supra*).

Moreover, the *Toscano* case expressly distinguished the *Thoma* and *Barmonde* cases, pointing out that in each of those cases the plaintiff and petitioner, respectively, was not entitled to the accrued salary claimed on any theory or in any proceeding, and, therefore, the cases were not authority for the contention that a proceeding in the nature of mandamus is the exclusive remedy to recover legal pay.

It is true that in the *Toscano* case the employee had been voluntarily reinstated and in that connection waived all his rights to accrued salary. But this was not an operative fact for the court pointed out that the municipality had done only what it was bound to do, and the waiver was an illegal coercion. Thus, the case may be properly interpreted to stand for the proposition that Toscano would be regarded as having all the rights of reinstatement because he was clearly entitled to reinstatement, and the municipality in effecting his reinstatement was powerless to support a condition of waiving accrued salary. If Toscano had refused to waive his accrued salary, had stood on his legal rights, and as a consequence had not been reinstated, there is no doubt that his widow would have prevailed, nevertheless, in recovering the accrued salary. Otherwise it would mean

that the municipality could have profited from practicing what the court described as an illegal coercion. The voluntary reinstatement, moreover, was not posited by the court as a basis for sustaining the action at law, which, if that had been done, would have brought the case more in line with the *ratio decidendi* in the *Thoma* and *Barmonde* cases. Instead, the court rested its holding on the right of the employee to alternative remedies, rejected the statements in the *Thoma* and *Barmonde* cases, and emphasized the discretionary (and therefore uncertain) character of a proceeding in the nature of mandamus (as it had many years before, in *Steinson* v. *Board of Educ.*, 165 N. Y. 431).

Taking, then, the complaint as true, it should not have been dismissed. This does not mean that the *Slochower* case (350 U. S. 551, *supra*,) necessarily covers the dismissals of plaintiffs in this action. At this point the allegations of the complaint are taken as true. Plaintiffs will eventually have to establish the facts asserted in their pleading, and sustain their right either under the *Slochower* case, or otherwise. So, too, there are other matters of defense which may eventually serve to defeat or diminish plaintiffs' recovery, but with such possible issues there is no present concern.

Accordingly, the order granting defendant's motion to dismiss the complaint and the judgment entered thereon should be reversed, on the law, and the motion denied, with costs to plaintiffs-appellants.

M. M. FRANK, J. (dissenting). I must dissent from the majority decision reversing Special Term and reinstating the complaint. The action involves section 903 of the New York City Charter which is quoted in full in a footnote in the majority opinion.

It is my view that restoration, either voluntary by the board or as the result of an article 78 proceeding, is an essential prerequisite to recovery of compensation alleged to be illegally withheld. I must also disagree with the majority that, even though this complaint is held sufficient, there are available defenses. While we are not concerned with any defense just now, it is not inappropriate to observe that if the pleading is adequate to sustain the cause of action asserted, then the only issue which survives may well be the quantum of damage, and summary judgment with an assessment thereof may necessarily follow.

The plaintiffs urge that since the Supreme Court of the United States has held (*Slochower* v. *Board of Educ.* 350 U. S. 551) that section 903 was in respect to Slochower violative of his

constitutional right of due process, it is an inevitable consequence that these plaintiffs are entitled to recover the salaries denied them from the time they were discharged. Regardless of the conclusiveness of the Supreme Court determination as to Slochower, it does not necessarily follow that these plaintiffs can sustain this action for that reason. They were not, of course, parties to the action in the United States Supreme Court. Moreover, the distinction between the *Slochower* case and the one at bar cannot be ignored. The former was an article 78 proceeding (306 N. Y. 532; 350 U. S. 551; 2 N Y 2d 719) and the ultimate determination was tantamount to a direction to restore the petitioner to the position from which he had been removed, including an award for unpaid compensation. Had the board, in restoring him to his post, refused to pay him for the period during which he was barred, I assume that we would all agree that an action at law would be the appropriate remedy. Unlike that situation or any other article 78 proceeding seeking restoration to a civil service position, if the plaintiffs may recover damages in this action, they can continue to collect their salaries without the board having had the opportunity to test the propriety of the dismissals.

In essence, the issue to be resolved is whether an employee of the Board of Higher Education, removed from a civil service position, may disregard the requirement for reinstatement or restoration to his post, either by direct action by the board or by an order in an article 78 proceeding, and commence a plenary action to recover the compensation denied him by reason of his discharge.

There can be no dispute that the determination of the United States Supreme Court (*Slochower* v. *Board of Educ.*, 350 U. S. 551, *supra*) is conclusive that the action taken by the board pursuant to section 903 of the New York City Charter was in respect to Slochower unconstitutional in that it was a violation of due process. However, nothing in that case should be characterized as deciding that section 903 of the charter is unconstitutional on its face or that all discharges thereunder are illegal. Rather, the majority opinion limited the determination to " the summary dismissal of appellant [which] violates due process of law " (p. 559). The court specifically reaffirmed the right of the city to discharge employees upon a " proper inquiry ". It indicated that such inquiry should consider " the subject matter of the questions, remoteness of the period to which they are directed, or justification for exercise of the privilege  *  *  * mistake, inadvertence or legal advice conscientiously given, whether wisely or unwisely " (p. 558). Accordingly, to sanction

an action at law here would permit the question of the legality of the dismissals to be resolved in a contract action, although that is precisely an issue that should be determined in a special proceeding under article 78.

While the condemned statute provides that " tenure of office or employment shall terminate and such office or employment shall be vacant ", the termination of employment in this case was not automatic and the plaintiffs in their pleading so concede. The amended complaint (par. 4) alleges that on or about March 16, 1953, the board dismissed the plaintiffs from their employment without a hearing (par. 5). The distinction sought to be drawn between dismissals involving acts of discretion, quasi-judicial determinations, and ministerial or administrative acts as permitting actions at law rather than requiring an article 78 proceeding is, in my view, not justified or appropriate. Procedurally, the distinction between certiorari and mandamus no longer exists (Civ. Prac. Act, §§ 1283–1284). Whether these plaintiffs are barred by time from relief under article 78 will depend upon whether the wrong which they assert is a continuing one and whether they made an appropriate demand. However, we should not be concerned with that problem in this action at law; nor, because of a short limitation statute, is it appropriate for us to provide the remedy of an action at law as a substitute for an article 78 proceeding, absent statutory or decisional authority. (See *Colodny* v. *New York Coffee & Sugar Exch.*, 4 A D 2d 137, affd. 4 N Y 2d 698.)

The plaintiffs emphasize the characterization in the majority opinion of the United States Supreme Court in *Slochower* that dismissal under section 903 " is therefore automatic." From that springboard, they argue that the board had only ministerial duties to perform. I cannot agree with that conclusion. The " automatic " dismissal, if such there be, occurs subsequently to the decision to discharge a particular employee.

Section 903 does not purport to cover the refusal to answer any and all questions. Rather, the statute limits the refusal to answer, from which termination of employment may follow, to questions relating to either " property, government or affairs of the city or of any county included within its territorial limits " or the " official conduct of any officer or employee of the city or of any such county ". Thus, the very language of the statute requires the defendant to determine in each instance whether a question did relate to the property, government or affairs of the city or to the official conduct of any employee. The opinion of Chief Judge CONWAY (*Matter of Daniman* v. *Board of Educ.*,

306 N. Y. 532) details the mechanics by which the board exercised its primary jurisdiction and responsibility in that case. The corporation counsel advised the board that the questions asked of Daniman, Shlakman, Slochower and the other petitioners "constituted an inquiry into the employees' official conduct within the purview of" section 903. Only then did it adopt a resolution terminating employment (306 N. Y. 537). It is a fair conclusion, from the absence in the pleading of anything to the contrary, that the same procedure was followed with respect to these plaintiffs. It follows, too, that the action taken by the board imports the finding that the questions which the plaintiffs refused to answer related to their official conduct.

Significantly, in every reported case under section 903, after the refusal of the public employee or officer to appear, to testify or to sign a waiver of immunity, the appointing officer affirmatively notified the employee that he was discharged. Just as "the effect of the answer on the teacher's fitness to continue teaching is for the board of education or of higher education, and those bodies only, to say" (306 N. Y. 538), so, too, these boards must necessarily possess the power to say in individual cases whether an inquiry as to a remote immoral or illegal act relates to the employee's official conduct.

It is reasonable to assume that there are circumstances where the determination by the appointing officer will constitute the exercise of discretion in its broadest sense. For example, Slochower testified before the Rapp-Coudert Committee in 1941 that he was a Communist. More than 10 years later, at a hearing held by a subcommittee of the United States Senate, Slochower refused to answer questions concerning his associations or political beliefs in 1941, although he did testify that he was no longer a member of the Communist party. When the corporation counsel advised the Board of Higher Education that his refusal fell within the ambit of section 903, the board could have properly determined, upon Slochower's record and experience as a teacher, that it would not consider such an inquiry as affecting his official conduct. Had that been the determination, instead of the one actually made, it is unlikely that any court would interfere with such an exercise of discretion. It is reasonable to insist that the term "official conduct" would encompass more when applied to the higher echelons of government, e.g., a city commissioner, than it would to menial employees. For instance, there would be a rational basis for holding that the indulgence in an adulterous relationship by the head of a city college affects his official conduct, whereas a similar

relationship maintained by a handy man working in the same institution would not. (See *Matter of Pinggera* v. *Municipal Civ. Serv. Comm.,* 206 Misc. 615.)

I do not think it is correct to assume that in *Toscano* v. *McGoldrick* (300 N. Y. 156), the Court of Appeals held or intended to hold that an action at law for the recovery of salary illegally withheld would lie without restoration or reinstatement to the position for which the salary was claimed. The city had attempted to abolish Toscano's job by eliminating the position in the budget. Thereafter, the '' city voluntarily and on its own initiative restored Toscano to the payroll * * * conditioned, however, upon a reduction in pay ''. (Pp. 159–160.) In restoring Toscano to his position, everything that could have been done in that regard by an article 78 proceeding was accomplished and, in effect, was a concession by the city that he had been illegally removed. To permit an action at law to lie under the circumstances outlined presented no problem since '' the payment of salary at the budgetary rate * * * did not involve the exercise of either administrative or judicial discretion nor present any question requiring review in a special proceeding '' (300 N. Y. 160). Nor should we assume that in *Toscano* the Court of Appeals distinguished or overruled its determination in *Thoma* v. *City of New York* (263 N. Y. 402) and *Matter of Barmonde* v. *Kaplan* (266 N. Y. 214). It stated that *Toscano* was not '' contrary '' to *Thoma* and both cases were inapplicable to the situation there. In *Thoma* the court indicated that even in mandamus, the plaintiff would not be entitled to relief, but it did state (p. 408) : '' If this had been an illegal or unlawful removal or demoting of the plaintiff, his remedy was by mandamus.'' So too, in *Barmonde,* since the petitioner was not entitled to recover back salary upon any theory, the form of judicial relief sought was immaterial.

In sum, it is my conclusion that the plaintiffs have not and cannot state a cause of action at law seeking recovery of salary withheld, in the absence of an allegation that they have been restored to the position from which each claims there was an illegal ouster. The judgment and order should be affirmed.

BOTEIN, P. J., McNALLY and STEVENS, JJ., concur with BREITEL, J., FRANK, J., dissents in opinion.

Judgment and order reversed upon the law, with costs to the appellants, and the motion of defendant to dismiss the complaint for legal insufficiency is denied, with $10 costs.