Martin B. Stecher, J.
This is an article 78 proceeding in the nature of mandamus seeking a judgment directing the respondent Commissioner of Social Services of Ontario County, New York, to reimburse the petitioners for care rendered one Torres since 1966, first by the New York City Department of Hospitals and then by its successor Health and Hospitals Corporation, in the Bird S. Coler Memorial Hospital.
The following facts are undisputed. Prior to April 17, 1966 Torres, a resident of this State for more than a year and a resident of Ontario County, New York, for more than six months, sustained an injury which rendered him a quadriplegic. (Ontario County, then and now, was a county social services district or a county public welfare district and the respondent was and is its commissioner.) The respondent provided medical care and assistance to Torres from April 11, 1966 to November 24, 1966 and it is acknowledged that he became a charge of Ontario County before November 24, 1966. For some portion of this period in 1966, Torres was cared for in the Strong Memorial Hospital of the University of Rochester Medical School in Monroe 'County at the expense of the respondent.
On September 7, 1966 following a recommendation by Strong Memorial that Torres be transferred to Bird S. Coler Memorial Hospital (then a New York City Hospitals Department insti *1063 tution and now an institution of its successor, the petitioner), the respondent undertook in writing addressed to the Deputy Commissioner of the Department of Hospitals, “ to accept financial responsibility for care of Bito Torres in Bird S. Coler Hospital.” On November 24,1966 Torres was transferred to Coler where he has remained ever since. Bills were rendered from time to time .by the New York City Department of Hospitals and on or about November 15, 1969 the respondent paid the department $28,618.73 on .account of bills rendered at a then daily rate of less than $35.
On July 13, 1970 and thereafter, the respondent forwarded to the department forms for Mr. Torres to fill out so that the respondent could ascertain his continuing need for financial assistance. Torres, his brother and the attorney retained by the brother were thoroughly unco-operative. They refused and continue to refuse to submit information on the form requested. At one point, the Department of Hospitals prepared and executed the form “ on behalf” of Torres but on October 21, 1970 the respondent rejected this effort saying “we cannot authorize care until we receive a D.SS-489 signed by ” Torres, his brother or the attorney. On November 10, 1970 the respondent notified the Department of Social Services that unless the forms, appropriately executed, were delivered to it by December 31, 1970 “ it will leave us no alternative but to close your [sic] case effective December 31, 1969.” No further payment was made by the respondent and on August 15, 1973 this proceeding was initiated to recover the cost of Torres’ care accrued by the petitioners and its predecessor.
The respondent resists asserting that the action is time barred; that this court lacks jurisdiction over the respondent; that the petitioners have an adequate remedy at law; that payment would violate the regulations of the State Department of Social Services; and laches.
The challenge to the use of the article 78 proceeding is without basis. It is true that the petitioners might have brought an action at law for damages for breach of the written undertaking “to accept financial responsibility for care of Bito Torres”. The petitioners declined to do so and if there is a basis for both an article 78 proceeding and some other form of action, the petitioners are entitled to choose the one they think is most suitable. Certainly, neither form is exclusive (Toscano v. McGoldrick, 300 N. Y. 156; cf. 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7801.02, subd. [4]) nor for that matter does an improper form of action preclude relief (CPLR 103).
*1064 Here it appears that an article 78 proceeding is appropriate for it seeks an adjudication of whether ‘ ‘ the body or officer failed to perform a duty enjoined upon it by law ” (CPLR 7803, subd. 1). The Social Services Law (§ 62, subd. 5, par. [b]) provides in part, ‘ ‘ if a public welfare district, town or city provides care for a person in a * * * • hospital or institution outside of its
territory and pays for such care directly or through a grant made to the recipient, the public welfare district, town or city making such provision shall continue to be responsible for payment for such care as long as the recipient is in need thereof ”. There is no dispute that the respondent paid for' such care directly to the petitioners’ predecessor, nor is there any dispute that he (Torres) continues in need of the institutional care. The statute, however, would appear to also require that the person shall be in economic need of such care and this is not established by the papers. The proceeding, however, is appropriately brought under article 78 to determine whether or not the respondent has failed to perform the duty imposed upon it by the above-cited statute.
The challenge to the jurisdiction of the court is without foundation. The Supreme Court of the State of New York sitting in this county is a State court and its process reaches throughout the State. The suggestion of a change of venue has not been brought before the court in any appropriate fashion (CPLR art. 5).
The respondent’s defense that the Statute of Limitations bars the proceeding is likewise without merit. Unquestionably, more than four months (CPLR 217) have expired since the petitioners’ demand for payment was refused, but the obligation to make payment both under the letter agreement and the Social Services Law is a continuing obligation and, as such, is not subject to the four-month limitation usually applicable to article 78 proceedings (Matter of Benvenga v. La Guardia, 268 App. Div. 566; Matter of Powers v. La Guardia, 181 Misc. 624, affd. 267 App. Div. 807, affd. 292 N. Y. 695).
Even without the continuing obligation, it is dubious that in this article 78 proceeding which is in reality bottomed upon breach of a written agreement, the court should impose the short Statute of Limitations rather than the contract Statute of Limitations. ‘ ‘ In applying a Statute of Limitations * * * 1 We look for the reality, and the essence of the action and not its mere name ’.” (Noel v. Interboro Mut. Ind. Ins. Co., 31, A D 2d 54, 55; citing Morrison v. National Broadcasting Co., 19 N Y 2d 453, 459; see, also, Brick v. Cohn-Kall-Marx Co., 276 N. Y. 259; *1065 Licari v. Isbrandtsen Co., 31 A D 2d 791.) The reality, of course, is a breach of contract and the four-month statute should not apply.
The respondent contends that because Torres or his agent failed to fill out the necessary forms submitted by the respondent that it would be illegal for the respondent to make the payments demanded. Such an argument must likewise be rejected. Torres was not and is not the social services’ client of the petitioners. He is the social services ’ client of the respondent and, as such, the respondent cannot impose upon the petitioners the respondent’s obligations in dealing with the respondent’s client. It may be that Torres by virtue of his refusal to supply the appropriate information is not entitled to aid from the respondent but that is not the issue in this case. What the petitioners seek to enforce is the respondent’s obligation to the petitioners and not to Torres and no act of Torres can relieve the respondent of its indebtedness to the petitioners.
The defense of laches is unavailing. Laches, as used in the context of an article 78 proceeding, ‘ ‘ is not the equitable doctrine of laches * * * (t)he sole test as we see it is thus whether, under the circumstances of the case, the delay in making the demand was unreasonably protracted ” (Matter of Cent. School Dist. No. 2 of Towns of Coeymans, New Scotland and Bethlehem v. New York State Teachers’ Retirement System, 27 A D 2d 265, 268). “ The term laches, as used in connection with the requirement of the making of a prompt demand in mandamus proceedings, refers solely to the unexcused lapse of time. The requirement of a prompt demand is part of the statutory scheme for the imposition of a short Statute of Limitations in article 78 proceedings. The term does not refer to the equitable doctrine of laches.” (Devens v. Gokey, 12 A D 2d 135, 137, affd. 10 N Y 2d 898.) It thus appears that the defense of laches in such a case can only mean delay in making the initial demand which would start the running of the Statute of Limitations (CPLR 217). Here, there is no dispute that demand was made time and again by the petitioners or their predecessor; that the demand was complied with in part by a payment in excess of $28,000 and that further prompt demands were made for further payment which were ultimately refused. Laches have no application to these facts.
Accordingly, this motion shall be referred to the Hon. Lloyd I. Papered, Special Referee, to hear and report on the following issues: 1. During what period of time, if any, was Torres financially unable to provide for himself the institutional care *1066 given him at Bird 8. Coler Memorial Hospital? 2. What was the fair and reasonable values of those charges to the date of this order? 3. To what sum, if any, is the respondent indebted to the petitioners for care afforded Torres at the said institution to the date of this order?
Counsel are directed to serve a copy of this order within five days after publication hereof on the office of the Referees, room 308-M, for the purpose of arranging a hearing date.